**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1793-23

GEORGE L. FARMER,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

LOUISE W. MARSH, THE
ESTATE OF LOUISE W.
MARSH, THE LOUISE W.
MARSH SECOND AMENDED
AND RESTATED TRUST, and
J. LAURENCE KENT, ESQUIRE,
as Trustee to the LOUISE W.
MARSH SECOND AMENDED
AND RESTATED TRUST, and
as Executor to the ESTATE OF
LOUISE W. MARSH,

       Defendants-Respondents/
       Cross-Appellants.

_____

Submitted March 5, 2025 – Decided June 23, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law
Division, Atlantic County, Docket No. L-1665-23.

George L. Farmer, appellant/cross-respondent pro se.

Christopher J. Stanchina, LLC, attorney for respondents/cross-appellants (Christopher J. Stanchina, of counsel and on the brief).

PER CURIAM

Plaintiff George L. Farmer, a self-represented attorney, appeals from the Law Division's December 11, 2023 summary judgment dismissal of his complaint against defendants Louise W. Marsh,[1] the Estate of Louise W. Marsh, the Louise W. Marsh Second Amended and Restated Trust, and J. Lawrence Kent, Esq., as trustee to the Trust and executor of the Estate (collectively, defendants), and a January 22, 2024 order denying reconsideration. Defendants cross-appeal from the January 22, 2024 order denying their motion for sanctions against plaintiff.

Because we conclude, as did the motion court, the claims asserted in plaintiff's Law Division complaint were precluded under the doctrine of collateral estoppel, the Maryland Supreme Court had jurisdiction to decide the attorney grievance action against plaintiff in that state, and plaintiff was afforded due process in the Maryland grievance proceeding, we discern no

---

[1] According to plaintiff's merits brief, Marsh died before he filed the present complaint.

reason to disturb the court's decisions on summary judgment and reconsideration. Nor are we persuaded the court erroneously denied defendants' application for sanctions. Accordingly, we affirm the orders under review.

I.

The genesis of plaintiff's Law Division complaint is a two-page retainer agreement between him and Marsh, a nonagenarian resident of Maryland with dementia. Dated March 6, 2020, the retainer agreement was drafted on plaintiff's "Attorney at Law" letterhead and reflected his New Jersey address. The subject matter of the correspondence stated, "LEGAL REPRESENTATION RETAINER AGREEMENT." Plaintiff was licensed to practice law in New Jersey but not in Maryland.

The facts giving rise to the ensuing litigation in Maryland are detailed in the written decisions of the federal district court judge in Farmer v. Kent, No. 20-1806, 2021 WL 690025 (D. Md. Feb. 23, 2021), and the Maryland Supreme Court in Attorney Greivance Commission of Maryland v. Farmer, 297 A.3d 1144 (Md. 2023), incorporated by reference in the motion court's decision, and need not be repeated in the same level of detail. Suffice it to say, for several decades, Kent, a Maryland attorney, represented Marsh, her husband, and their son. In 1988, Kent created a family trust naming Marsh and her husband as

grantors, trustees, and beneficiaries, and their son as successor beneficiary. Att'y Grievance Comm'n, 297 A.3d at 1152.

In 2010, one year after her husband died, Marsh granted Kent a general power of attorney and designated him successor trustee. Ibid. Marsh's son remained the successor beneficiary. Ibid. In March 2018, Thuan Nguyen became Marsh's full-time, live-in caretaker. Ibid. Thereafter, Marsh's son married Nguyen. Ibid.

By March 2020, Marsh was unable to serve as trustee and Kent replaced her in that capacity. Id. at 1153. Because Marsh's son became ill and was unable to serve as successor trustee, Kent prepared an amendment to the trust on March 3, 2020, naming his law partner as successor trustee. Ibid. Marsh agreed to the amendment after obtaining her son's consent. Farmer, 2021 WL 690025, at *1.

Around the same time, Nguyen retained plaintiff to investigate Kent's actions. Att'y Grievance Comm'n, 297 A.3d at 1153. On March 4, 2020, plaintiff visited Marsh's son in the hospital. Ibid. On March 5, 2020, plaintiff sent correspondence to Kent seeking information regarding the trust with apparent authorization from Marsh instructing Kent to provide the pertinent documents. Ibid. Plaintiff's correspondence indicated he was an "Attorney at Law" and provided his New Jersey address.

4

On March 6, 2020, Marsh signed the following retainer agreement in the presence of a Maryland notary public.  Ibid.  The retainer agreement provided, in full:

> I have been advised by your daughter-in-law that there have been numerous actions taken by attorney J. Laurence Kent that could be considered suspicious. She has retained me to advise her and you as to what needs to be done to assure that you are not being taken advantage of as a result of Mr. Kent's actions that have transpired in the past few days.
>
> As such, I have requested in writing that Mr. Kent provide me with certain documents to review so that I can determine what needs to be done to protect your interests.  I spoke to Mr. Kent today by phone and he advised me, among another [sic] things that he was not going to provide me with the documents because I do not represent you.
>
> Please accept this letter as my request for me to represent your interests in reviewing Mr. Kent's prior services and documents, as well as the financial accounts including, but not limited to the document he had you sign recently, the trust agreement(s), your will, the financial accounts, the expenditures from the accounts, etc. with the purpose of determining if there are any improprieties.
>
> By signing this retainer letter of engagement, you are authorizing me to perform these services, obtain the aforementioned documents, and take whatever steps I deem necessary (if any) to protect your interests depending upon the information I discover.

5

You authorize me to retain any expert that I deem necessary to assist me in this assignment such as an accountant. You also authorize me to retain an attorney that is licensed in Maryland in the event that we need to have someone appear in court to protect your interests. You agree to pay the expert fees and local counsel's fees.

With respect to my fees, you agree to pay me $[REDACTED]/hour for any and all work that I perform and have performed to date. You authorize Mr. Kent to pay me from any account (including, but not limited to the Trust fund(s) account) a $ [REDACTED] retainer. I will bill you on a periodic basis to which you authorize Mr. Kent to pay as well.

In light of the fact that I represent your daughter-in-law as well, you will need to waive any conflicts that might exist as well as any appearance of conflicts. By entering into this retainer agreement, you hereby do waive said conflicts and appearance of conflicts.

If the above comports with your understanding of our agreement, please sign below and return to me.

In his March 10, 2020 letter to Nguyen, plaintiff sought her waiver of any conflicts resulting from his representation of her and Marsh. Id. at 1154. In the letter, plaintiff noted Marsh "retained [him] to represent her interests." Plaintiff thereafter attempted to obtain documents from Kent and the bank that held Marsh's trust account. Ibid. The bank refused, and Farmer filed a complaint against the bank with the Department of Banking. Id. at 1154 n.7.

A-1793-23

In April 2020, Kent filed an emergency guardianship petition for Marsh's person and property. Id. at 1154-55. In April 2020, the Maryland circuit court granted Kent's petition, and appointed separate counsel as guardian of Marsh's person and property. Id. at 1155. Around the same time, plaintiff attempted to hire two local Maryland attorneys to sponsor his pro hac vice application to represent Marsh and her son concerning "potential trust litigation" and Kent's "alleged impropriety." Ibid. Both Maryland attorneys ultimately declined because Marsh was represented by court-appointed counsel. Id. at 1156.

Thereafter, Marsh's appointed counsel filed an emergency petition for a hearing regarding the temporary guardian appointment pursuant to Maryland law. Ibid. Plaintiff filed a pro hac vice motion, without local counsel sponsorship, and a motion to dismiss the emergency petition. Ibid. Nguyen separately moved to dismiss the petition, vacate the previous orders, and for appointment as Marsh's sole healthcare decision-maker. Ibid. Although Nguyen claimed she was self-represented, the circuit court found "[plaintiff] either drafted or assisted in drafting the motion." Ibid.

The circuit court denied plaintiff's pro hac vice motion, denied Nguyen's dismissal motion, found Marsh's appointment of counsel was properly made, and prohibited plaintiff from contacting Marsh. Id. at 1157. After the hearing,

7

plaintiff billed Marsh's temporary guardian for $158,589.18 in "legal services purportedly rendered" on Marsh's behalf between March and May 2020. Ibid. Marsh's temporary guardian declined payment. Ibid.

In June 2020, plaintiff sued Kent, Kent's law partner, and their firm in Maryland federal district court alleging various tort claims. Ibid. The district court granted the defendants' ensuing motion to dismiss. Farmer, 2021 WL 690025, at *7. Pertinent to this appeal, the district court invalidated the retainer agreement between plaintiff and Marsh because plaintiff was not a member of the Maryland bar and the agreement violated public policy. Id. at *5.

The district court explained, "Maryland law has articulated a public policy against the unlicensed practice of law in the state, and [plaintiff] is not a licensed attorney in Maryland." Ibid. Accordingly, the court dismissed plaintiff's tortious interference claim. Ibid. In doing so, the court discredited plaintiff's argument that the retainer agreement was not formed for legal services rendered, citing plaintiff's attorney letterhead, the subject line of the agreement, and the agreement's language. Ibid. The court further noted plaintiff solicited Marsh and billed for legal services provided. Ibid. The court concluded the "agreement thus was, in form, substance, and execution, an agreement to provide legal services." Ibid.

Plaintiff appealed and the Fourth Circuit affirmed the district court's decision. Farmer v. Kent, No. 21-1350, 2022 WL 4482087, at \*1 (4th Cir. Sept. 27, 2022).

Shortly after the district court rendered its decision, Maryland Bar Counsel filed a statement of charges against plaintiff and referred him to a peer review panel. The Attorney Grievance Commission of Maryland thereafter filed a petition for disciplinary or remedial action asserting plaintiff violated the Maryland Attorneys' Rules of Professional Conduct (MARPC). Att'y Greivance Comm'n, 297 A.3d at 1151.

Following a four-day testimonial hearing, another Maryland circuit court issued a written decision concluding plaintiff violated several MARPCs. Ibid. Plaintiff filed multiple exceptions to the hearing officer's factual and legal findings. Id. at 1152.

In July 2023, the Maryland Supreme Court overruled plaintiff's exceptions, and adopted the hearing judge's factual findings and conclusions of law. Ibid. Citing the plain terms of the retainer agreement, the Court rejected plaintiff's argument that the pertinent MARPC did not apply to his "theory that he provided non-legal services." Id. at 1164. The Court additionally concluded plaintiff violated the MARPCs in view of his conflict of interest and because

"he was not authorized to practice law in Maryland." Id. at 1162. Citing the pertinent Maryland statute, the Court also rejected plaintiff's contention, because he "hop[ed] or anticipat[ed] that he would be admitted pro hac vice without obtaining a prior sponsor," he was absolved of the unauthorized practice of law violation. Id. at 1166.

The next month, in August 2023, plaintiff filed a three-count complaint in the Law Division against defendants for quantum meruit, book account, and account stated. Defendants moved to dismiss for failure to state a claim, R. 4:6-2(e), and lack of jurisdiction, R. 4:6-2(b), and sent plaintiff a frivolous litigation notice pursuant to Rule 1:4-8. Defendants asserted plaintiff's claims were precluded under the doctrines of res judicata and collateral estoppel. Plaintiff cross-moved for partial summary judgment, claiming the Maryland courts lacked jurisdiction. In the alternative, plaintiff argued he was denied his right to due process in the Maryland proceedings, and as such, the resultant findings did not bar the claims raised in his Law Division complaint.

On the first return date, the court converted defendants' dismissal motion to a summary judgment motion, R. 4:6-2, finding "certain factual allegations and

documents were outside the pleadings."[2]   The parties filed supplemental submissions.

Following oral argument, the court rendered a cogent written decision, squarely addressing the dispositive issues raised in view of the governing legal principles, which the court chronicled in detail.  Those principles included application of the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, to the Maryland judgments.  The court found the Maryland judgments were entitled to full faith and credit, and principles of collateral estoppel precluded relitigating whether the retainer agreement was void for public policy and whether plaintiff provided non-legal services to Marsh.

Citing our decisions in Tara Enterprises, Inc. v. Daribar Management Corp., 369 N.J. Super. 45 (App. Div. 2004), and Sonntag Reporting Serv., Ltd. v. Ciccarelli, 374 N.J. Super. 533, 538 (App. Div. 2005), the motion court correctly recognized, "[w]hen viewed in the light of due process rights, a foreign judgment is not entitled to full faith and credit in New Jersey if a [responding party] demonstrates the forum state lacked personal or subject matter jurisdiction, . . . or if a [responding party] was denied adequate notice and a

_____

[2]  The parties did not provide a transcript of the initial hearing; we glean the court's reasons from its ensuing written decision.

11

reasonable opportunity to be heard." (second and third alterations in original).

Similar to the Maryland Supreme Court, the court found plaintiff performed "a significant number of tasks" in that state. To support its decision, the court noted plaintiff was retained by a Maryland resident "to assert inappropriate conduct against a Maryland attorney" regarding the attorney's representation of Marsh and his financial decisions concerning her trust. The court elaborated:

> Haling him into that state for purposes of an attorney disciplinary proceeding concerning the above representation and actions taken in that state certainly [is] neither unfair or unreasonable nor does it offend traditional notions of fair play and substantial justice. Plaintiff had made substantial contact with the parties who were residents of Maryland, who practiced law in Maryland, filed legal actions in Maryland and challenged transactions and the authority and validity of the attorney making such transactions all made in Maryland. Additionally, this court finds that the Maryland court has subject matter jurisdiction concerning attorney ethics matters including issues concerning conflicts of interest and the unauthorized practice of law which apply to plaintiff's actions.

Nor was the motion court persuaded by plaintiff's argument he was denied due process because the Maryland circuit court failed to conduct a fair hearing. To the contrary, the court, here, found plaintiff was afforded notice "and was provided the opportunity to have a contested hearing concerning [the] issues [he raised] over a period of four trial days." Noting plaintiff failed to cite "any

12

specific issues he was not permitted to present to that tribunal," the court found unavailing plaintiff's contention "he was wrongfully limited in time by the trial judge to present his case." Moreover, the motion court noted, on appeal, the Maryland Supreme Court fully reviewed the hearing judge's findings.

Turning to the preclusive effect of the proceedings in the Maryland federal and state courts, the motion court correctly recognized plaintiff's action was not barred under the doctrine of res judicata because the parties in the present action were not the same, nor "in privity with the [Maryland] actions."

Conversely, the motion court found plaintiff's present action was precluded under the doctrine of collateral estoppel because the Maryland "tribunals clearly found that the retainer agreement . . . was void as against public policy." Noting plaintiff had a full opportunity to be heard concerning the validity of the retainer agreement in the Maryland ethics proceeding and the state court "issued a final judgment or order in that matter," the motion court rejected "plaintiff's arguments that the prior tribunal did not decide whether he [wa]s entitled to compensation for non-legal tasks." The motion court reasoned, "[t]he state court found that all the time billed was under a retainer agreement for legal services and all tasks were legal services." Citing our decision in Infante v. Gottesman, 233 N.J. Super. 310 (App. Div. 1989), the motion court

13

was further persuaded that a party to a contract cannot recover under a quantum meruit theory if the contract is deemed void as against public policy in this state.

In his ensuing motion for reconsideration, plaintiff cited our Supreme Court's decision in <u>Starkey, Kelly, Blaney & White v. Estate of Nicolaysen</u>, 172 N.J. 60 (2002), and argued the court erroneously dismissed his quantum meruit claim. In its written decision, the court supplemented its quantum meruit findings, distinguishing the circumstances of the present matter from those in <u>Starkey</u>. As the court correctly noted, in <u>Starkey</u>, the parties' oral retainer agreement was invalidated because it was not reduced to writing but the Court found plaintiff was entitled to payment under a quantum meruit theory. 172 N.J. at 63. Conversely, here, the court correctly recognized "the agreement was unenforceable as void against public policy." Finding plaintiff failed to meet the criteria for reconsideration, the court denied his motion.

The motion court also denied defendants' application for sanctions, reasoning plaintiff's arguments were unpersuasive but were not made in bad faith.

## II.

In his overlapping arguments on appeal, plaintiff reprises the issues raised before the motion court. He maintains the Maryland courts lacked personal

14

jurisdiction over him and lacked subject matter over the "non-legal services" he performed. Among his arguments, plaintiff contends the motion court erroneously: failed to find he was "deprived of due process in the Maryland proceedings"; failed to find "the Maryland hearing judge was predisposed against [him]"; applied the doctrine of collateral estoppel to dismiss his claim; dismissed his quantum meruit claim; and failed to decide all issues raised.

After de novo review, see Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024), we reject plaintiff's unsupported claims. We affirm the orders under review substantially for the thoughtful and thorough reasons articulated in the motion court's well-reasoned decisions accompanying the orders. Having employed the same standard as the motion judge, see Samolyk v. Berthe, 251 N.J. 73, 78 (2022), we conclude defendants are entitled to judgment as a matter of law, see R. 4:46-2(c). Plaintiff raises no issues on appeal that warrant further discussion. R. 2:11-3(e)(1)(E).

## III.

Lastly, we address defendants' cross-appeal. Defendants argue the trial court abused its discretion in denying its cross-motion for sanctions because plaintiff violated Rule 1:4-8 by filing baseless litigation. According to

defendants, plaintiff ignored the Maryland adjudications in filing this complaint, which defendants argue should not have been filed.

We review a trial court's decision to award counsel fees on a motion for frivolous litigation sanctions under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Rule 1:4-8(a) permits sanctions for frivolous claims. United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). A claim is frivolous when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." Ibid. (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)). Further, N.J.S.A. 2A:15-59.1(b) permits sanctions for frivolous litigation if either:

> (1) [t]he complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or (2) [t]he nonprevailing party knew, or should have known that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith

16

argument for an extension, modification or reversal of existing law.

However, sanctions are not appropriate when the party has "an objectively reasonable belief in the merits of an argument." J.O. v. Twp. of Bedminster, 433 N.J. Super. 199, 221 (App. Div. 2013). The term "frivolous" should be construed restrictively in order to reflect the legislative intent that citizens' ready access to the judiciary is an important premise of democratic society. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561-62 (1993). "When the [litigant's] conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to have acted in bad faith." Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999).

The trial court's findings are supported by substantial, credible evidence in the motion record. Although the court ultimately was unpersuaded by his argument, the court reasonably recognized plaintiff had a colorable argument based on his "honest[] belie[f] he was not given appropriate due process in the Maryland ethics hearing." Accordingly, we discern no abuse of discretion in the motion court's decision denying sanctions.

To the extent we have not addressed defendants' remaining contentions, we conclude they lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division